UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CAROLINE CONKWRIGHT,

     Plaintiff,

v.                                                  Civil No. 2:24cv249

FOREFRONT   DERMATOLOGY,   S.C.,
and FOREFRONT MANAGEMENT, LLC,

     Defendants.

## MEMORANDUM ORDER

This matter is before the Court on Caroline Conkwright's ("Plaintiff") Motion for Remand to Virginia Beach Circuit Court. ECF No. 7. Because the facts and legal questions are adequately presented in the motion and subsequent briefs, and oral argument would not aid in the decisional process, the Court finds that a hearing is unnecessary. For the reasons stated below, Plaintiff's Motion is **DENIED**. Id.

### A. Background

On March 1, 2024, Plaintiff filed a "Complaint for Declaratory Judgment" against Forefront Dermatology, S.C. and Forefront Management, LLC ("Defendants") in Virginia Beach Circuit Court. ECF No. 7. Plaintiff, a physician's assistant employed at Forefront Dermatology as of March 2024, seeks a declaration that the "Forefront Dermatology Agreement" ("the Employment Agreement" or "Agreement") she signed in December of

2020 is not enforceable as a contract because the "parties did not complete the contract process." ECF No. 1-1, at 11. If the Agreement is found to be a fully executed and enforceable contract, Plaintiff requests a declaration establishing that at least the "post-employment competitive restrictions" included in the Agreement are unenforceable. Id.

On April 17, 2024, Defendants timely filed a Notice of Removal from the Virginia Beach Circuit Court to this federal district court. ECF No. 1, at 1-6. One week later, Plaintiff filed a Motion for Remand, arguing that Defendants' Notice of Removal does not establish federal subject matter jurisdiction. ECF No. 7, at 2-3. Defendants filed a responsive brief opposing remand, ECF No. 15, and Plaintiff filed a reply brief, ECF No. 16. The matter is thus fully briefed and ripe for disposition.

### B. Legal Standard

The federal removal statute allows a state court defendant to remove a case to federal court if the state court action could have been originally filed in federal district court. 28 U.S.C. § 1441; see Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 186 (4th Cir. 2002). The burden of establishing federal jurisdiction is on the party seeking removal. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). Because removal jurisdiction raises significant federalism concerns, district courts must strictly construe removal

2

jurisdiction, and if federal jurisdiction is doubtful, remand is necessary. Id.

### 1. Diversity Jurisdiction

Federal courts are courts of limited jurisdiction. Therefore, an action may be removed to federal district court only if the district court has subject matter jurisdiction over such action. Pinkley, Inc. v. City of Frederick, Md., 191 F.3d 394, 399 (4th Cir. 1999). Generally, to establish subject matter jurisdiction, the party seeking to invoke a federal court's jurisdiction must either demonstrate "diversity of citizenship" under 28 U.S.C. § 1332 or a "federal question" under 28 U.S.C. § 1331. Arbaugh v. Y & H Corp., 546 U.S. 500, 513-14 (2006).

Here, Defendants have premised their Notice of Removal on diversity of citizenship. ECF No. 1, at 2. Federal district courts possess diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). The parties do not dispute that Plaintiff's citizenship is different from Defendants' respective citizenship — Plaintiff is a citizen of Virginia, and Defendants are citizens of Wisconsin and Delaware. See ECF No. 1, at 3; ECF No. 15, at 4. Rather, the parties' dispute centers on whether Defendants have satisfied

3

the amount-in-controversy requirement for diversity jurisdiction, $75,000.  28 U.S.C. § 1332(a).

Because Plaintiff has filed an action for declaratory judgment, the amount-in-controversy must be assessed differently than it is in actions seeking money damages.  Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002).  By way of background, when granting declaratory judgment, a reviewing court "may declare the rights and other legal relations of any interested party seeking such declaration."[1]  28 U.S.C. § 2201(a).  The Declaratory Judgment Act does not create an independent basis for jurisdiction, and thus a reviewing court must still satisfy itself that the diversity jurisdiction prerequisites are met.  See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950).  In determining whether a party has established diversity-based subject matter jurisdiction, a district court reviewing a declaratory judgment action ascertains the amount in controversy by measuring "the value of the object of the litigation," rather than looking to the quantum of damages pled

---

[1] Federal courts sitting in diversity apply state substantive law and federal procedural law.  See generally Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).  The Declaratory Judgment Act is a procedural statute that creates no substantive rights.  Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950).  Therefore, as federal procedural law, the Declaratory Judgment Act is applicable to the instant diversity-based action.  Erie R. Co., 304 U.S. at 78; Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co., 736 F.3d 255, 261 n.3 (4th Cir. 2013) (noting that the Fourth Circuit "treat[s] a state court declaratory action that is removed as invoking the Federal Declaratory Judgment Act, 28 U.S.C. § 2201."); see Jones v. Sears Roebuck & Co., 301 F. App'x 276, 281 n.12 (4th Cir. 2008).  The substantive law underlying Plaintiff's claim for declaratory relief, such as contract law, remains Virginia law.  Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996).

4

in a complaint. Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 347 (1977). In the Fourth Circuit, "it is settled that the test for" determining the value of the object of the litigation "'is the pecuniary result to either party which [a] judgment would produce.'" Dixon, 290 F.3d at 710 (quoting Gov't Employees Ins. Co. v. Lally, 327 F.2d 568, 569 (4th Cir. 1964)).

When applying the "pecuniary result" test, reviewing courts look "to the underlying rights and obligations of the litigants to 'calculate the potential pecuniary impact of [a] judgment to either party.'" Wood v. Gen. Dynamics Advanced Info. Sys., Inc., No. 1:08cv624, 2009 U.S. Dist. LEXIS 51517, at *10 (M.D.N.C. June 17, 2009) (quoting Market Am., Inc. v. Tong, No. 1:03cv420, 2004 U.S. Dist. LEXIS 13664, at *8 (M.D.N.C. July 15, 2004)). This review of the pecuniary impact of a judgment on either party is known as the "either-viewpoint approach." O'Sullivan Films v. Neaves, No. 5:17cv31, 2017 U.S. Dist. LEXIS 176967, at *14 (W.D. Va. Oct. 24, 2017); Lally, 327 F.2d at 569.

### 2. Declaratory Judgment Act

In addition to requiring subject matter jurisdiction, the Declaratory Judgment Act provides that a reviewing court may exercise jurisdiction over a plaintiff's request for declaratory relief only when there is an "actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). Moreover, the Fourth Circuit cautions that district courts, when reviewing complaints

5

pursuant to the Declaratory Judgment Act, "not abuse [their] discretion in [their] exercise of jurisdiction." Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 592 (4th Cir. 2004) (internal quotations and citations omitted). While the "actual controversy" requirement implicates a plaintiff's standing to bring suit, the latter abuse-of-discretion inquiry is "prudential" in nature. Id. at 594. Explaining this prudential inquiry, the Fourth Circuit has affirmed that even if "a district court possesses declaratory judgment jurisdiction, it may nonetheless, in the exercise of its discretion, decline to entertain the action." Id. Such discretion, however, is "not without bounds," and a district court "must have 'good reason' for declining to exercise its declaratory judgment jurisdiction." Id. (quoting Cont'l Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994)). To that end, a district court is "obliged to rule on the merits of a declaratory judgment action when declaratory relief will serve a useful purpose in clarifying and settling the legal relations in issue." Id. (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).

### C. Discussion

With this legal background in mind, the Court first addresses whether it has subject matter jurisdiction over Plaintiff's claim, and then considers the Declaratory Judgment Act's additional jurisdictional requirements — the presence of an

6

"actual controversy" and the prudence of exercising jurisdiction. Volvo Constr. Equip., 386 F.3d at 592.

## 1. Diversity Jurisdiction

Plaintiff argues that Defendants have not satisfied the amount-in-controversy requirement for diversity jurisdiction. ECF No. 16, at 3. Plaintiff maintains that Defendants' stated basis for such jurisdiction in its Notice of Removal — that "if Plaintiff violated her restrictive covenants, the amount of economic damage Defendants would incur exceeds $75,000" — is too speculative to satisfy the amount-in-controversy requirement. ECF No. 1, at 3; ECF No. 16, at 3.

As summarized above, Plaintiff seeks a declaration that her Employment Agreement is not an enforceable contract, or alternatively, that at least the post-employment competitive restrictions therein are unenforceable. ECF No. 1-1, at 11. Thus, the pecuniary result of such a declaration on either party determines the amount-in-controversy. Dixon, 290 F.3d at 710. Consistent with this request for relief, Plaintiff has provided notice to Defendants that she intends to leave her full-time employment and has advised Defendants "that she did not believe that she had any competitive restrictions in place." ECF No. 1-1, at 8. Therefore, by testing the legal validity of the Employment Agreement, Plaintiff has placed the monetary value of the Agreement, and her employment, in issue. Id.; see Dixon, 290 F.3d at 711 (noting that a complaint seeking a declaration that

7

an employment contract is unenforceable places the "employment contract and its monetary value in issue.").

Addressing the value of Plaintiff's employment, Defendants state in their Notice of Removal that if Plaintiff violated her restrictive covenants (by, for example, engaging in competitive employment), Defendants would incur economic damage in excess of $75,000. ECF No. 1, at 3. Defendants substantiate this claim through the submission of a sworn declaration by a manager at Forefront Management, Gregory Diment, who avers that in 2023, Forefront Dermatology "collected approximately $1.407 million from the services Ms. Conkwright provided," and paid Plaintiff "$487,194 in compensation" that year, plus $58,193 of benefits and cost reimbursement, for a total of $545,387. ECF No. 15-1, at 2-3. Accordingly, Defendants estimate that Plaintiff's requested declaration would occasion anywhere from $545,387 to $1.407 million in pecuniary impact to Defendants. ECF No. 15, at 6. Defendants reason that the invalidation of Plaintiff's Employment Agreement, or the restrictive covenants therein, and Plaintiff's consequent departure from Defendants' employ, could eliminate all or part of the $1.407 million in "collections" that Forefront Dermatology accrued directly from Plaintiff's services in 2023. ECF No. 15, at 6.

Plaintiff challenges Defendants' calculation of the pecuniary impact of her requested declaration, arguing that Defendants' estimate is grounded in impermissible speculation.

ECF No. 16, at 6. However, Defendants are only obligated to demonstrate by a preponderance of the evidence that the amount-in-controversy exceeds the $75,000 jurisdictional threshold. <u>Francis v. Allstate Ins. Co.</u>, 709 F.3d 362, 369 (4th Cir. 2013). And the submission of an affidavit or declaration attesting to the economic impact of a potential contract breach is generally sufficient to meet the preponderance standard. <u>See</u> <u>O'Sullivan</u>, 2017 U.S. Dist. LEXIS 176967, at *15-16; <u>McCoy v. Erie Ins. Co.</u>, 147 F. Supp. 2d 481, 493 (S.D.W. Va. 2001). In such declaration, Defendants state that "Forefront Dermatology collected approximately $1.407 million from the services Ms. Conkwright provided" in 2023, and if Plaintiff were to leave Forefront Dermatology and take some of her patients with her, Defendants would "lose all or a portion of those collections." ECF No. 15-1, at 3. Because the value of post-employment competitive restrictions may be measured through the profits or revenue generated directly by the employee before their departure, Plaintiff's generation of $1.407 million in collections for Defendants in 2023 satisfies the amount-in-controversy requirement. <u>See</u> <u>Absolute Mach. Tools, Inc. v. Clancy Mach. Tools, Inc.</u>, 410 F. Supp. 2d 665, 669 (N.D. Ohio 2005) (finding that the value of post-employment competitive restrictions can be measured by "the profits earned by the employer on business generated by the employee during the period immediately preceding his termination."); <u>accord</u> <u>FirstEnergy Sols. Corp. v. Flerick</u>,

521 Fed. Appx. 521, 525 (6th Cir. 2013) (finding amount in controversy satisfied when employee subject to a non-compete agreement generated over $300,000 in gross profits in the year prior to his resignation).

Moreover, since it is also uncontroverted that Plaintiff was paid at least $487,194 by Defendants in 2023, has informed Defendants that she plans to leave their full-time employ, and does not believe she is bound by competitive restrictions, Defendants have demonstrated by a preponderance of the evidence that Plaintiff's requested declaration would result in a pecuniary loss of over $75,000 to Defendants. Dixon, 290 F.3d at 711 (finding amount-in-controversy requirement satisfied when a prospective contract invalidation would deprive the employer of services it had valued at over $75,000).[2]

In addition to the potential pecuniary impact on Defendants, the pecuniary result that the requested declaration would occasion for Plaintiff also satisfies the amount-in-controversy under the Fourth Circuit's "either party" rule. Dixon, 290 F.3d at 711; Lally, 327 F.2d at 569. A declaration that Plaintiff's

---

[2] Plaintiff's objections as to the speculative nature of Defendants' amount-in-controversy argument are ultimately unpersuasive. ECF No. 16, at 6. While it is true that there is a prudential limit on the degree of speculation that a reviewing court will tolerate in ascertaining an amount-in-controversy, the inquiry necessarily entails some informed forecasting — the Court must look to the pecuniary result that the requested declaration would produce if granted. Dixon, 290 F.3d at 710; Lally, 327 F.2d at 569; see also Tong, 2004 U.S. Dist. LEXIS 13664, at *13-14 ("Defendants have offered little additional evidence to support the contents of their affidavits. Nevertheless, in light of the fact that the affidavits are largely unrefuted by any evidence presented by Plaintiff, such affidavits are sufficient to satisfy the Defendant's burden of proof.").

employment agreement is non-binding would, according to Defendants, bring an end to Plaintiff's current compensation from Forefront Dermatology. ECF No. 15, at 6, 8; O'Sullivan, 2017 U.S. Dist. LEXIS 176967, at *17 (finding that the prospective termination of an employment contract with a salary over $75,000 satisfies the amount-in-controversy requirement). Plaintiff attempts to combat this amount-in-controversy calculation by pointing out that she still works at Forefront Dermatology and "there is no explanation as to how any possible loss of income by [Plaintiff] is relevant to this case." ECF No. 16, at 7. But Plaintiff fails to engage with the test for ascertaining the amount-in-controversy in a declaratory judgment action, which includes the salary that would be lost if an employment contract were invalidated.[3] Dixon, 290 F.3d at 710-11. Thus, Defendants have demonstrated by a preponderance of the evidence that

---

[3] Plaintiff has cited many cases in notional support of her motion, none of which persuade the Court that remand is appropriate here. Plaintiff relies heavily on Kirklen v. Buffalo Wild Wing Int'l, Inc., a case where a motion to remand was granted. No. 3:18cv468, 2019 U.S. Dist. LEXIS 66353, at *6 (W.D.N.C. April 17, 2019). There, the defendant's main argument for having met the amount-in-controversy requirement was that other cases had yielded trial awards over $75,000, failing to even explain how the "other cases" were factually similar. Id. Therefore, the Kirklen Court remanded the case given the mere "conjecture" offered by the defendant. Id. In contrast, here, Defendants have provided a sworn declaration corroborating the stated value of Plaintiff's employment agreement. Separately, Plaintiff cites ECR Software Corp. v. Zaldivar for the proposition that a thorough argument for removal must be made by a defendant in the notice of removal itself. 5:12cv39, 2013 U.S. Dist. LEXIS 57997, at *22-23 (W.D.N.C. April 23, 2013). But the ECR Software defendant failed to make any mention of diversity jurisdiction in its notice of removal. Id. Here, Defendants' Notice of Removal both asserts diversity jurisdiction and explains the specific rationale for finding an amount-in-controversy over $75,000. ECF No. 1, at 2.

Plaintiff has stated her intention to leave their employ, and should the requested declaration be granted, Plaintiff's six figure compensation under the employment agreement would cease following her departure. ECF No. 15-1, at 3. Indeed, after the issuance of such a declaration, Plaintiff would be legally permitted to compete for and personally collect hundreds of thousands of dollars in revenue that was previously collected by Defendants. Id. These facts are sufficient to demonstrate an amount-in-controversy of well over $75,000.[4]

In summary, when considering the amount-in-controversy from the viewpoint of either party, the Court finds that Defendants have satisfied the requirements for diversity jurisdiction.[5]

---

[4] Separate from Plaintiff's argument that Defendants have not satisfied the requirements for diversity jurisdiction, Plaintiff claims that Section 9.6 of the Employment Agreement, entitled "Venue/Jurisdiction," precludes this Court's exercise of jurisdiction over her declaratory judgment action. See ECF No. 16, at 10. Plaintiff insists that the only venues permitted are those listed in Section 9.6. But Plaintiff has placed in question whether the Employment Agreement is at all legally enforceable as a contract, so it would not be appropriate for the Court to apply a provision in that Agreement at this stage. ECF No. 1-1, at 8. That said, the Court notes that the "Venue/Jurisdiction" provision at issue appears on its face to be permissive, providing that the parties agree that the "non-exclusive forum for any litigation will be . . . the Virginia Beach Circuity [sic] Court in Virginia and hereby expressly consent to the jurisdiction of such courts." ECF No. 1-1, at 27 (emphasis added); IntraComm, Inc. v. Bajaj, 492 F.3d 285, 294 (4th Cir. 2007) ("A general maxim in interpreting forum-selection clauses is that an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion.").

[5] Plaintiff's request for attorney's fees under 28 U.S.C. § 1447(c) is declined. Section 1447(c) provides that an "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal," and the Court here declines to order the payment of attorneys' fees.

## 2. Declaratory Judgment Act

Since Defendants have demonstrated diversity jurisdiction, the Court must next address whether Plaintiff's action comports with the jurisdictional requirements of the Declaratory Judgment Act, 28 U.S.C. § 2201(a). The Court first addresses whether Plaintiff's action presents an "actual controversy," and then turns to the propriety of exercising jurisdiction. Id.

The actual controversy requirement derives from Article III of the United States Constitution, which provides that the "judicial Power" shall extend to all "Cases" and "Controversies." U.S. Const. art. III, § 2. In the context of an action for declaratory judgment, the Constitution's case-or-controversy provision requires that a plaintiff "show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality" to warrant the issuance of a declaration. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). Indeed, the dispute before a reviewing court must be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id.

In order to satisfy the case-or-controversy requirement, a plaintiff must possess standing to sue, which consists of three components: "(1) the plaintiff must allege that he or she suffered an actual or threatened injury that is not conjectural

13

or hypothetical, (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision must be likely to redress the injury." Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).[6]

Applying the foregoing principles to Plaintiff's action, Plaintiff has notified Defendants of her intention to leave her current employment arrangement. ECF No. 1-1, at 9. This suggests an "immediacy and reality" to the instant dispute, and the fact that Plaintiff tried to "come to an amicable post-employment arrangement with Forefront Dermatology, to no avail" suggests a substantial controversy underlying Plaintiff's action. MedImmune, 549 U.S. at 127; ECF No. 1-1, at 9. Indeed, the parties plainly have "adverse legal interests" in that Plaintiff believes she is not subject to the restrictive covenants in the Employment Agreement, a position in conflict with Defendants' view that such covenants bind Plaintiff. ECF No. 15, at 3. And the fact that Plaintiff has purportedly refrained from engaging in any conduct which could violate the Employment Agreement does not "minimize the nature of the controversy" so long as there are "actively contested legal rights," which here include whether the

---

[6] In order to avoid premature litigation, a declaratory action must also be ripe — that is, the "controversy is presented in clean-cut and concrete form." Miller, 462 F.3d at 316; O'Sullivan, 2017 U.S. Dist. LEXIS 176967, at *7. As recognized by the Fourth Circuit, the ripeness inquiry is similar to standing analysis. Miller, 462 F.3d at 319 (citing Erwin Chemerinsky, Federal Jurisdiction § 2.4 (4th ed. 2003)).

Employment Agreement constitutes an enforceable contract.[7] Wellness Grp., LLC v. King Bio. Inc., No. 1:12cv281, 2014 U.S. Dist. LEXIS 61073, at *13 (W.D.N.C. April 30, 2014). Therefore, the Court concludes that Plaintiff has alleged a "threatened injury that is not conjectural or hypothetical," satisfying the first element of standing analysis. Miller, 462 F.3d at 316.

Considering the traceability and redressability requirements for standing, a favorable declaration finding the Employment Agreement unenforceable — or a declaration more narrowly nullifying the restrictive covenants — would redress Plaintiff's prospective injury (incurring the financial and legal costs associated with the violation of an enforceable restrictive covenant). And in light of the instant briefing outlining the economic implications of Plaintiff's Employment Agreement, it is appropriate for the Court to rule on the legal issues presented by the Employment Agreement to "clarify[] and settl[e] the legal relations in issue" so as to "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Volvo Constr. Equip., 386 F.3d at 594 (quoting Quarles, 92 F.2d 321, 325). As a result, the Court finds that

---

[7] Plaintiff states in her reply brief that "a desire to avoid breaching any potentially binding contractual commitments is what caused [Plaintiff] to file her Complaint for Declaratory Judgment," and avers in a declaration that she has not attempted to solicit any of Forefront Dermatology's current or former patients. ECF No. 16, at 3; ECF No. 16-1, at 2. The actual controversy requirement, however, does not require a plaintiff to take affirmative steps towards violating her legal obligations in order to bring a declaratory action. MedImmune, 549 U.S. at 134.

there is an "actual controversy" under the Declaratory Judgment Act because the prospective injury alleged by Plaintiff (financial and professional costs) is fairly traceable to the challenged conduct (the enforcement of the Employment Agreement and the restrictive covenants therein). 28 U.S.C. § 2201(a). Plaintiff's requested remedy, a declaration nullifying the restrictive covenants, would redress the threatened injury. Miller, 462 F.3d at 316.

Finally, the Court has engaged in the requisite "prudential" inquiry into the propriety of exercising jurisdiction over Plaintiff's claim. Volvo Constr. Equip., 386 F.3d at 594. To that end, a declaratory action is generally a proper vehicle for adjudication of the enforceability of a restrictive covenant, as long as an employer has indicated that it will seek to enforce that covenant. O'Sullivan Films, 2017 U.S. Dist. LEXIS 176967, at *8; see, e.g., Domtar AI Inc. v. J.D. Irving. Ltd., 43 F. Supp. 3d 635, 639-40 (E.D.N.C. 2014); Wellness Grp., 2014 U.S. Dist. LEXIS 61073, at *13. Here, Defendants have clearly stated that they believe Plaintiff is subject to the provisions and restrictions set forth in the Employment Agreement, which indicates that Defendants would seek to enforce such restrictions against Plaintiff in the event of an alleged breach. ECF No. 15, at 3. Therefore, the Court finds that it is appropriate to exercise jurisdiction over Plaintiff's declaratory action. Volvo Constr. Equip., 386 F.3d at 592.

## D. Conclusion

For the reasons explained above, Plaintiff's Motion for Remand is **DENIED**.

The Clerk is **REQUESTED** to send a copy of this Memorandum Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May **30** , 2024

17